**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

UNITED STATES OF AMERICA

v.

No. 3:24-CR-48
Varlan/Poplin

BARABARA MULLINS and
CALEB MULLINS

_____

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS COUNTS 1-15 OF THE INDICTMENT**
_____

## I. Introduction

This Memorandum of Law is filed in support of the defendants' Motion to Dismiss

Counts 1-15 of the Indictment. The defendants are charged with conspiracy to commit healthcare

fraud in violation of 18 U.S.C. § 1349 and with committing health care fraud in violation of 18

U.S.C. § 1347. Counts 1-15, however, derive from the allegations of defrauding a "health care

benefit program", which the government alleges is the Energy Employees Occupational Illness

Compensation Program Act ("EEOICPA").  The term "health care benefit program," defined at

18 U.S.C. § 24(b), means "any public or private plan or contract, affecting commerce, under

which any medical benefit, item, or service is provided to any individual, and includes any

individual or entity who is providing a medical benefit, item, or service for which payment may

be made under the plan or contract."

The Indictment in this case is twenty pages long and includes a litany of allegations

against the defendants. Count 1 of the Indictment alleges as follows:

> Beginning in or around April 2014 and continuing interrupted until
> at least October 2023, in the Eastern District of Tennessee and

1

elsewhere, defendants MEGAN MULLINS, CALEB MULLINS, and CAMM CARE, together, and with other persons known to the grand jury but not named herein, knowingly and willfully combined, conspired, and agreed to commit healthcare fraud, in violation of 18 U.S.C. § 1347–that is, to execute and attempt to execute a scheme and artifice to defraud a **health care benefit program**, and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money and property owned by, or under the custody or control of, a health care benefit program—that is, DOL—in connection with the delivery of or payment for health care benefits, items, or services.

(ECF 3, PageID# 8) (emphasis added).

Further, counts 2-15 of the Indictment allege as follows:

On or about the dates set forth in the table below, in the Eastern District of Tennessee, defendants MEGAN MULLINS and CALEB MULLINS, aided and abetted by each other and others known to the grand jury but not named herein, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute and attempt to execute the scheme and artifice described above in paragraphs 37 through 84 to defraud a **health care benefit program** affecting commerce, as defined in 18 U.S.C. § 24(b), that is, DOL, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises money and property owned by, and under the custody and control of DOL, by submitting or causing to be submitted false and fraudulent claims for payment from DOL, each row being a separate count of this indictment. . .

(ECF 3, PageID# 17) (emphasis added). Because Counts 1-15 of the Indictment involve allegations that the defendants defrauded or attempted to defraud a health care benefit program, and the EEOICPA is not a health care benefit program, these counts must be dismissed.

## II. Law and Argument

The essential elements of health care fraud under 18 U.S.C. §1347 are: that one "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to

2

defraud." *United States v. Anderson*, 67 F.4th 755, 770 (6th Cir. 2023). The statute defines a "health care benefit program" under 18 U.S.C. § 24(b) as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." 18 U.S.C. § 24(b).

Counts 1-15 in the Indictment allege that the defendants defrauded a health care benefit program, specifically the EEOICPA. (ECF 3, PageID# 10-18). However, the EEOICPA does not qualify as a healthcare benefit program as that term is defined in 18 U.S.C. § 24(b). Accordingly, counts 1-15 fail to state an offense against the defendants and must be dismissed.

### a. The EEOICPA was designed to compensate energy workers for exposure to toxic substances. It is not a health insurance plan or contract.

The legislative history, statutory language, and the administration of the program all point towards the fact that the EEOICPA was designed to deliver compensation to covered employees as opposed to being designed as a government health insurance statute. See 18 U.S.C. 7384d(b). Congress did not enact the EEOICPA to provide any semblance of health care coverage to the public, but rather its purpose focuses on remedial damages suffered by covered employees through singular compensation payouts and specific incidental medical benefits.

The Indictment repetitively cites the EEOICPA sections as being for the purpose of compensation. (ECF 3, PageID# 4-5). The Act is explicitly coined a "compensation program" in both its title and function, and Congress made clear its intent that the program was to compensate covered employees. 42 U.S.C. § 7384(b)(1). Eligibility under the EEOICPA is based on employment status and presence of a specific illness. To qualify for compensation benefits, an individual must qualify as a covered employee. The term "covered employee" is defined as a covered beryllium employee, a covered employee with cancer, or a covered employee with

3

chronic silicosis (as defined at 42 U.S.C. §7384r).   *See* 42 U.S.C. 7384l(1).  Traditional health

care benefit programs like Medicare and Medicaid are based on health care needs. See *Gardi v.*

*Damschroder*, No. 23-3991, 2024 U.S. App. LEXIS 24418 (6th Cir. Sep. 23, 2024)

("Participating states are required to provide certain services and benefits to categorically needy

persons.") The EEOICPA, however, is based on whether a worker meets specific guidelines for

specific occupational, work-related illnesses. *Id.* The legislative history in enacting the

EEOICPA supports the notion that the EEOICPA was not intended to be characterized as a health

care benefit program. The Sixth Circuit outlined the purpose in creating the act:

> In 2000, Congress enacted the little-known Energy Employees
> Occupational Illness Compensation Program Act, 42 U.S.C. §
> 7384 *et seq. ("EEOICPA" or "the Act")*. The purpose of the Act
> was to provide compensation and other services to current and
> former U.S. Department of Energy ("DOE") employees and
> contractors (or their survivors) who developed illnesses relating to
> exposure to ultra-hazardous substances at DOE sites. *See* 42
> U.S.C. § 7384. In its current form, the Act establishes two
> compensation programs, creatively referred to as "Part B" and
> "Part E" for their placement in the statutory taxonomy. *See* 42
> U.S.C. §§ 7384*l*-7384w-1 (Part B) & §§ 7385s-7385s-16 (Part E).

*Berry v. United States Dep't of Labor*, 832 F.3d 627, 630 (6th Cir. 2016).

Similarly, Congress clearly and unambiguously stated the intent of the EEOICPA was to

establish a program that: "pays variable cash benefits based on impairment and wage loss and

provides medical benefits to former DOE contractors and uranium workers exposed to toxic

substances on the job." Scott Szymendera, *The Energy Employees Occupational Illness*

*Compensation Program Act (EEOICPA)*, (2022), https://www.congress.gov/crs-product/R46476.

The legislative intent behind the Act is reinforced by the fact that all regulations

pertaining to the EEOICPA are found under Chapter 20 of the Code of Federal Regulation. As

seen in the plain language of the statute, the language in the C.F.R. reinforces the notion that the

EEOICPA is solely a compensation program, that is, it was enacted for the purpose of paying out funds for damages incurred due to exposure to toxic chemicals and substances. 20 C.F.R. § 30.0. The regulation outlines that claimants receive funds and monetary compensation for the actual suffering of an occupational illness or from wage-loss or medical costs. 20 C.F.R. § 30.0. 20 C.F.R. § 30.5 defines "benefits" and "compensation" the same, referring only to the actual monetary compensation from the fund. 20 C.F.R. § 30.5 ("Benefit or Compensation means the money the Department pays to or on behalf of either a covered Part B employee under Part B…").

Similarly, under 42 U.S.C. § 7385, the EEOICPA offsets any compensation received under the Act with any other awards or settlements received for the same injury, further proving that the EEOICPA is a compensation program, not a health care benefit program. 42 U.S.C. § 7385. The EEOICPA is not a contractual arrangement, an insurance plan, or a workers' compensation plan. It is not a "plan or contract" that resembles health insurance plans or contracts at all because it does not offer enrollment, it does not involve co-pays, deductibles, or standardized treatment models. U.S. Dep't of Labor, Office of Workers' Comp. Programs, Div. of Energy Emps. Occupational Illness Comp. Program, DEEOIC Medical Benefits 2, https://www.dol.gov/sites/dolgov/files/owcp/energy/regs/compliance/brochure/medical_benefits.pdf. ("For your coverage, DEEOIC does not require you to pay a co-payment or deductible.")

Accordingly, the EEOICPA is a compensation-based statute and does not resemble or mimic a health care benefit program in any manner.  In short, the EEOICPA is not a plan or contract within the meaning of 18 U.S.C. § 24(b).

**b. Any Medical Benefits Supplied Through the EEOICPA are Incidental, Narrowly Limited, and Do Not Act Similarly to a "Health Care Benefit Program."**

While the EEOICPA does pay for certain and specific medical services for those who qualify, these services are limited. First, they are only available for treatment of specifically covered occupational related illnesses, and not general need-based healthcare. See 42 U.S.C. § 7384l; see also 42 U.S.C. § 7384d(b) ("The purpose of the compensation program is to provide for timely, uniform, and adequate compensation of covered employees and, where applicable, survivors of such employees, suffering from illnesses incurred by such employees in the performance of duty for the Department of Energy and certain of its contractors and subcontractors.").

Second, neither Medicaid, Medicare, the Department of Health and Human Services, nor any healthcare-related entity administers the compensation for the medical benefits. Rather, they are administered by the Department of Labor ("DOL"). See 20 C.F.R. §§ 30.1, 30.400(c); see also (ECF 3, PageID# 5).

Most importantly, the crux of the issue is that the medical component in the EEOICPA is entirely remedial, rather than foundational and preventative, which is a fundamental aspect of all traditional health care plans. 42 U.S.C.S. § 18091 (outlining the foundational and proactive requirement to obtain health insurance in emphasizing that "…if there were no requirement, many individuals would wait to purchase health insurance until they needed care"). The compensation award is not used for general medical treatment, and any medical treatment is provided to patients only *after* the occupational illness arises. See 42 U.S.C. § 7384l. While the EEOICPA does include coverage for medical services, the purpose is compensatory and not for the provision of health care. See 42 U.S.C. §7384(a)(8).

6

Moreover, the EEOICPA does not provide the services necessary to qualify as a health care benefit program as required by § 24(b). Traditional interpretations of health care benefit programs under § 24(b) function as ongoing and preventive payments and provisions of medical benefits. See 42 U.S.C.S. § 300gg-2 (guaranteeing renewability of health insurance plans on condition of continuous payments). However, the EEOICPA functions as a one time, lump-sum compensation that include incidental, occupational remedial services. *In re Luttrell*, 313 B.R. 751, 757 (Bankr. E.D. Tenn. 2004) ("[EEOICPA] is a one-time governmental benefit intended to compensate employees of the Department of Energy for their years of exposure to hazardous working conditions…"). While courts outside of the Sixth Circuit have interpreted § 24(b) to include programs such as automobile insurance that pays for medical benefits, this is still distinct from the EEOICPA. See *United States v. Lucien*, 347 F.3d 45 (2d Cir. 2003). These types of cases include insurance companies which are *contractually* obligated to continuously pay for medical care as a part of routine coverage. *Id.*; See generally 42 U.S.C.S. § 300gg-2. However, the EEOICPA does not include routine coverage, and any medical benefits are secondary and contingent upon a rigorous claim process to establish a covered illness related to the claimant's occupation. See 42 U.S.C § 7384. Moreover, the fraud present in *Lucien* and other similar cases include the mimicking of a standard health care delivery program, with fabricated accidents, fabricated injuries, and true clinics billing insurers. *Lucien*, 347 F.3d at 49. These practices are simply not present within the compensation provided by the EEOICPA.

Although health insurance plans and even automobile insurance plans can be considered health care benefit programs in other circuits, these both are proactively insured. The EEOICPA, however, is retroactive, remedial in nature, and is not an insurance plan or contract. Additionally, while 42 U.S.C. § 7384t refers to "medical benefits," it's clear that this section operates merely

7

to provide funds. Subsection (b) makes clear that this Act is not *furnishing* benefits, but instead refers to the method of paying to third parties as a program to establish the provision of compensation. 42 U.S.C. § 7384t(b). The solely remedial and compensatory purpose of the EEOICPA is further supported by the fact that the compensation provided is merely a method of establishing a federal tort alternative:

> To receive compensation under the Act, a covered employee must comply with the Act's election of remedies requirements. The requirements force individuals to choose between suing the government or their employer in tort or receiving statutory benefits. See 42 U.S.C. § 7385d(d) (defining covered tort cases). One who receives compensation under the Act does so in full satisfaction of all claims against the United States or a Department of Energy contractor. See 42 U.S.C. § 7385b.

*Fink v. Chao*, 395 F. Supp. 2d 625, 626-27 (N.D. Ohio 2005).

Notably, undersigned counsel has not found a single instance in a contested case where the EEOICPA was cited as the underlying "health care benefit program" for a prosecution under 18 U.S.C. § 1347. Despite the EEOICPA's twenty-five-year existence and the high volume of cases interpreting and applying § 1347, the complete absence of any precedent or application to the EEOICPA supports the notion that it does not fall under the definition of a health care benefit program under 18 U.S.C. § 24(b). See 42. U.C.S.C. § 7384. If Congress intended for the EEOICPA to be considered a "health care benefit program", one would expect that there would be at least a singular prosecution for health care fraud by defrauding the EEOICPA over the past two decades and over $25 billion awarded in compensation. Office of Environment, Health, Safety & Security, *Champion of Health and Justice: Over $25 Billion Awarded in Compensation and Medical Benefits to 141,000 Employees through the Energy Employees Occupational Illness*

*Compensation Program Act* (Feb. 28, 2024).[1]  This is particularly true given the government's routine applications of § 1347 to Medicare, Medicaid, and other well-established programs that explicitly provide medical benefits as their primary purpose and core function. (citation). See, e.g., *United States v. Hunt*, 521 F.3d 636 (6th Cir. 2008); *United States v. Bertram*, 900 F.3d 743 (6th Cir. 2018); *United States v. Hickman*, 331 F.3d 439 (5th Cir. 2003).

Moreover, the only enforcement actions that have arisen relating to the EEOICPA have been pursued under the False Claims Act ("FCA"), a civil statute. *See* Press Release, U.S. Dep't of Justice, Home Healthcare Company Agrees to Pay Nearly $10 Million to Resolve False Claims Act Allegations Relating to Its Participation in the Energy Employees Occupational Illness Compensation Program (Jan. 5, 2024)[2]; *See* Press Release, U.S. Dep't of Justice, Home healthcare company pays $9 million for submitting false claims relating to the Energy Employees Occupational Illness Compensation Program Act (Feb. 7, 2023)[3]; *United States ex rel. McIver v. Act for Health, Inc.,* 536 F. Supp. 3d 839 (D. Colo. 2021). The FCA, contrary to the health care fraud statute, does not require specific intent to prosecute, and has a broader scope and application. 31 U.S.C. §§ 3729–3733. The claims pursued under the FCA include alleged overbilling violations through home health care, circumstances similar to the allegations in this case. Yet, the DOJ's reliance on enforcement through the FCA shows that the government has not generally viewed alleged fraud against the EEOICPA as falling within the narrower scope of health care fraud.

---

[1]
https://www.energy.gov/ehss/articles/champion-health-and-justice-over-25-billion-awarded-compensation-and-medical-benefits
[2]
https://www.justice.gov/archives/opa/pr/home-healthcare-company-agrees-pay-nearly-10-million-resolve-false-claims-act-allegations
[3]
https://www.justice.gov/usao-sdoh/pr/home-healthcare-company-pays-9-million-submitting-false-claims-relating-energy

Accordingly, the EEOICPA is not a health care benefit program "under which any medical benefit … is provided" in the context of 18 U.S.C. § 24(b).

### c. The Rule of Lenity weighs against a broad interpretation of 18 U.S.C § 24(b).

Criminal statutes must be interpreted narrowly. The Sixth Circuit outlined the rule of lenity holding that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis v. United States*, 401 U.S. 808, 812, (1971); *United States v. Henry*, 983 F.3d 214, 225 (6th Cir. 2020). This illustrates that the court construes ambiguities in criminal laws in favor of the defendant. *United States v. Thomas*, 211 F.3d 316, 321 (6th Cir. 2000) (Clay, J., concurring) (stating that the rule of lenity resolves ambiguities in favor of the criminal defendant).

The rule further "ensures that criminal statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between the legislature, the prosecutor, and the court in defining criminal liability." *Liparota v. United States*, 471 U.S. 419, 427-28 (1985) (citing U*nited States v. Bass*, 404 U.S. 336, 348 (1971)). "Where 'congressional purpose is unclear,' the rule of lenity 'provides a time-honored interpretive guideline' that criminal culpability does not attach unless it has been clearly established." *United States v. Reichert*, 747 F.3d 445, 463 (6th Cir. 2014) (citing *Liparota*, 471 U.S. at 428). Therefore, the rule of lenity prevents expansion of statutes beyond what Congress did not unambiguously intend to criminalize.

In this case, the term "health care benefit program" does not unambiguously include the EEOICPA because its purpose is compensatory, not the provision of health care. In reading the plain language of the statute, it does not include workers' compensation programs that provide compensation and remedial benefits, without a primary purpose of being for providing health

10

care. Moreover, if the congressional purpose of the Act is not definitively inclusive of being considered a health care benefit program, criminal culpability cannot be attached here. The government must give fair warning of what conduct is prohibited under the statute. At best, the EEOICPA's inclusion is ambiguous, and under *Thomas*, such ambiguity must be resolved against criminal liability. *Thomas*, 211 F.3d at 321. Therefore, expanding the definition of a health care benefit program to include the EEOICPA would result in an overly broad and uncertain interpretation of § 24(b), which the rule of lenity prohibits.

### III. Conclusion

Counts 1-15 of the Indictment in this case alleged violations of 18 U.S.C. § 1347 and 18 U.S.C. § 1349. Specifically, counts 1-15 allege that the defendants defrauded a health care benefit program. However, the EEOICPA is not a health care benefit program under the definition of 18 U.S.C § 24(b), because it is not a plan or contract and it does not operate like a health care benefit program. Accordingly, counts 1-15 of the Indictment should be dismissed.

Respectfully submitted on April 7, 2025.

s/ Robert R. Kurtz
Robert R. Kurtz
BPR No. 20832
625 Market Street, Ste. 901
Knoxville, TN 37902
865-522-9942
rrkurtz@gmail.com

s/ Jonathan D Cooper
Jonathan D. Cooper
BPR No. 016041
607 Market Street, Ste. 1100
Knoxville, TN 37902
865-524-8106
cooper@knoxdefense.com