| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 3:24-CR-48-TAV-DCP |
| BARBARA MEGAN MULLINS and | ) | |
| CHRISTOPHER CALEB MULLINS, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned for report and recommendation on Defendant Barbara Mullins and Defendant Christopher Mullins's joint Motion to Dismiss Counts 1–15 of the Indictment [Doc. 62]. 28 U.S.C. § 636(b). The Indictment alleges that Defendants, a married couple, were the owners and operators of Patriot Homecare, a home health care business [Doc. 3 ¶¶ 2–5, 37]. Defendants are charged with conspiring to defraud a health care benefit program by submitting fraudulent claims for home health services and obtaining money by fraudulent pretenses from the U.S. Department of Labor, Office of Workers' Compensation Program, Division of Energy Employees Occupational Illness Compensation ("DOL") by billing the DOL for services allegedly rendered to current or former Department of Energy ("DOE") employees covered by the Energy Employees Occupational Illness Compensation Program Act ("EEOICPA") [*Id.* ¶¶ 1, 8–11, 35]. The Indictment charges that Defendants conspired to commit healthcare fraud in violation of 18 U.S.C. §§ 1347 and 1349 from April 2014 through October 2023 (Count One) [*Id.* at 35]. It also charges that Defendants committed fourteen counts of health care fraud in violation of 18 U.S.C. § 1347 (Counts Two–Fifteen) [*Id.* ¶ 86].[1] Defendants ask the Court to

---

[1] The Indictment further charges Defendants with four counts of making false statements relating to health care matters (Counts Sixteen–Nineteen) [Doc. 3 ¶ 88] and three counts of wire fraud (Counts Twenty–Twenty-two [*id.* ¶ 90].

dismiss Counts One through Fifteen because the EEOICPA is not a health care benefit program under 18 U.S.C. §§ 24(b) and 1347 [Doc. 62 p. 1].

For the reasons discussed herein, the undersigned finds that the EEOICPA qualifies as a "health care benefit program" within the meaning of §§ 24(b) and 1347. Accordingly, the undersigned respectfully recommends that Defendants' motion to dismiss [Doc. 62] be denied.

## I. BACKGROUND

On April 7, 2025, the Grand Jury charged that from April 2014 through October 2023, Defendants Barbara and Christopher Mullins conspired[2] to "commit health care fraud in violation of 18 U.S.C. §§ 1347—that is to execute and attempt to execute a scheme and artifice to defraud a health care benefit program, and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money and property owned by, or under the custody or control of, a health care benefit program—that is DOL—in connection with the delivery of or payment for health care benefits, items, or services" [Doc. 3 ¶ 35]. The Indictment alleges that Defendants enriched themselves by submitting false claims for payment for skilled and unskilled home health services to DOL in relation to patients covered by the EEOICPA [*Id*. ¶¶ 36, 39–40; *see also id*. ¶ 11]. The Indictment also charges Defendants with fourteen counts of health care fraud in violation of 18 U.S.C. § 1347 in relation to the payment of heath care benefits by executing a scheme to defraud a health care benefit program, "as defined in 18 U.S.C. § 24(b)" [*Id*. ¶ 86].

The Indictment explains that Congress enacted the EEOICPA in October 2000 to compensate current or former DOE employees (or certain contractors or vendors) diagnosed with one of four diseases from exposure to radiation, beryllium, or silica during their employment [*Id*. ¶¶ 8–9]. The DOL administers the EEOICPA and uses federal funds to pay health care providers

---

[2] Count One charges conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 [Doc. 3 p 8].

2

for treating EEOICPA beneficiaries [*Id*. ¶ 11]. EEOICPA beneficiaries receive a Medical Benefits Identification Card bearing their name and other identifiers related to the EEOICPA and DOL [*Id*. ¶ 12]. These cards, known as "white cards," are "similar to traditional insurance cards" [*Id*.]. The DOL covers all medical costs for a qualified EEOICPA beneficiary that "a qualified physician prescribed or recommended as relating to the accepted condition, including home health services by" skilled and unskilled aids [*Id*. ¶ 14].

On April 7, 2025, Defendants jointly moved to dismiss Counts One through Fifteen of the Indictment arguing that they fail to state an offense because the EEOICPA is not a "heath care benefit program" [Doc. 62 p. 1; Doc. 63 pp. 2–3]. In support, Defendants argue that the "legislative history, statutory language, and the administration of the program" all demonstrate that EEOICPA is a compensation program, not a health insurance plan [Doc. 63 p. 3–5]. They further contend that the medical benefits provided by the EEOICPA are incidental, limited, and only "remedial, rather than foundational and preventative" [*Id*. at 6]. According to Defendants, the EEOICPA is designed as an alternative to pursuing a federal tort because the covered employee must choose between suing the government/their employer or receiving the statutory benefits [*Id*. at 8]. They maintain that not a single case involves prosecution for health care fraud for defrauding the EEOICPA but, instead, actions relating to the EEOICPA are litigated civilly as violations of the False Claims Act [*Id*. at 8–9]. Finally, Defendants assert that the rule of lenity argues against broadly interpreting the definition of "health care benefit program" to encompass the EEOICPA [*Id*. at 10–11].

The Government responded in opposition, arguing that the Indictment adequately alleges that the EEOICPA is a health care benefit program and that factual disputes must be decided by the jury [Doc. 64 p. 1]. It argues that as a matter of law, the EEOICPA meets the definition of a "health care benefit program" in 18 U.S.C. § 24(b) [*Id*. at 7–9]. The Government maintains that § 24(b) unambiguously defines a health care benefit program as "'any public or private plan on

3

contract" providing "any medical benefit, item, or service . . . to any individual'" [*Id*. at 8 (quoting § 24(b))]. It contends that because the plain meaning of the statutory definition is clear, the Court need not consider the legislative history, regulations, or any other materials outside the statute [*Id*. at 11]. The Government asserts that if the Court does look beyond the statutory language, the statutory and regulatory structure of the EEOICPA show that it operates as a health care benefit program [*Id*. at 11–12]. It contends that to the extent Defendants argue the Indictment is factually insufficient, the indictment alleges that the EEOICPA is a health care benefit program and explains how it operates as one [*Id*. at 12]. The Government maintains that even if Counts Two through Fifteen somehow fail to state an offense, Count One is not similarly affected because to show conspiracy to commit health care fraud, it must prove only an agreement to commit an unlawful act, not a scheme to defraud [*Id*. at 13]. Moreover, it asserts the lack of ambiguity in the statute precludes application of the rule of lenity [*Id*. at 15].

The parties appeared before the undersigned on July 22, 2025, for a hearing on the pending motion. Assistant United States Attorneys Jeremy Dykes and William Roach appeared on behalf of the Government. Attorney Robert R. Kurtz represented Defendant Barbara Mullins. Attorney Jonathan Cooper represented Defendant Christopher Mullins. After hearing the parties' arguments, the Court took the motion under advisement.

## II. ANALYSIS

Defendants ask the Court to dismiss Counts One through Fifteen of the Indictment for failure to state an offense as a matter of law because the EEOICPA is not a "health care benefit program" as that term is defined in 18 U.S.C. § 24(b) [Doc. 62 p. 1; Doc. 63 pp. 1–3].[3] Defendants

---

[3] To the extent that Defendants contend that the Government cannot prove facts that would show the EEOICPA is a health care benefit program, such is an argument for the jury, not this Court. *United States v. Assad*, No. 2:18-CR-140, 2019 WL 3945389, *5 (E.D. Tenn. Aug. 21, 2019) (rejecting defendants' challenges to the government's substantive case and observing that

4

assert that the EEOICPA is not a health insurance plan nor does it resemble one [Doc. 63 pp. 3–5]. They contend that, instead, the EEOICPA provides health benefits incidental to compensation, and that the ambiguity in determining whether the EEOICPA is a health care benefit program must be resolved in their favor [Doc. 63 pp. 6–11]. The Government counters that the plain language of § 24(b) unambiguously shows that the EEOICPA is a health care benefit program [Doc. 64 pp. 7–12].

After reviewing the parties' arguments and the applicable law, the undersigned concludes that the plain language of the statutory definition shows the EEOICPA is a health care benefit program and, thus, Counts One through Fifteen properly allege violations of 18 U.S.C. §§ 1347 and 1349.

## A. Plain Language of § 24(b)

In matters of statutory interpretation, the Court turns first to the plain language of the statute. *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Id*. (internal quotation omitted). In the typical case, "'[s]tatutory definitions control the meaning of statutory words[.]'" *United States v. Burgess*, 553 U.S. 124, 129–30 (2008) (quoting *Lawson v. Suwannee Fruit & Steamship Co.*, 336 U.S. 198, 201 (1949)). Undefined words are given their "ordinary, contemporary, common meaning." *United States v. Plavcak*, 411 F.3d 655, 660 (6th Cir. 2005) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)). If the meaning of the statute is apparent from its terms, the Court need not examine

---

"courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations") (citation omitted). Instead, as noted by the Government [Doc. 64 p. 6], in evaluating the Defendant's motion to dismiss for failure to state an offense, the Court takes the facts as alleged in the Indictment as true. *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

legislative history because it "assume[s] that the ordinary meaning of the language that Congress employed 'accurately expresses its legislative purpose.'" *Id*. at 661 (quoting *Mills Music, Inc. v. Snyder*, 469 U.S. 153, 164 (1985) (internal quotation omitted)). Thus, "if the words of the statute are unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced." *Id*. (citations omitted & modified).

Counts One through Fifteen allege that Defendants defrauded a "health care benefit program," namely the EEOICPA. Section 24(b) defines a "health care benefit program" as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract." The plain language of § 24(b) clearly encompasses the EEOICPA. The EEOICPA is a "public," i.e., governmental program administered by the DOL. *See* 18 U.S.C. § 7384(b)(2) (stating payments under the EEOICPA are from the federal treasury), § 7384d (establishing the EEOICPA), § 7384e (establishing fund for payment of compensation under the EEOICPA). The EEOICPA provides medical benefits and services to qualifying employees by covering the cost of medical care and services "prescribed or recommended by a qualified physician for that illness[.]" 18 U.S.C. § 7384t(a). Here, Defendants do not argue that the payments under the EEOICPA do not affect commerce. Moreover, the statutory definition broadly encompasses "any" such plan or contract for medical benefits.

Defendants argue that the EEOICPA is not a "plan or contract" and does not "resemble[] health insurance plans or contracts . . . because it does not offer enrollment, it does not involve co-pays, deductibles, or standardized treatment models" [Doc. 63 p. 5]. Defendants argue that instead the EEOICPA is a compensation program that pays damages to certain employees exposed to toxic chemicals and substances [*Id*. at 3–5].

6

As the Government points out [Doc. 64 p. 8], common definitions of the term "plan" encompass detailed proposals or programs to accomplish some act, which would include the EEOICPA. *Merriam-Webster Dictionary*, https://www.merriam-webster.com/dictionary/plan (last visited August 3, 2026) (defining "plan" as "a detailed formulation of a program of action," and "a detailed program (as for payment or the provision of some service)"). The program need not resemble a traditional health insurance plan to qualify as a health care benefit program. *United States v. Manamela*, 612 F. App'x 151, 155–56 (3rd Cir. 2015) ("If Congress had intended to limit § 24(b) to insurers, it certainly could have done so." (citation omitted)); *see also United States v. Lucien*, 347 F. 3d 45, 52 (2d Cir. 2003) (finding automobile insurance program providing medical benefits to be a health care benefit program despite defendants' arguments that the program "does not operate nationwide" and "does not cover all injuries and illnesses-only those resulting from automobile accidents"). Moreover, providing medical benefits as a part of a compensation program does not preclude the EEOICPA from qualifying as a health care benefit program. *See, e.g.*, *United States v. Martinez*, 588 F.3d 301, 306, 315 (6th Cir. 2009) (affirming conviction for health care fraud when Ohio Bureau of Workers' Compensation was a victim health care benefit program).

The EEOICPA is a public plan that provides medical benefits, services, or items to individuals who are qualifying DOE employees. As such, the EEOICPA falls within the plain language of the definition of health care benefit program.

**B. Purpose of the EEOICPA**

Defendants argue the EEOICPA is not a health care benefit program even though it provides medical benefits because the purpose of the EEOICPA "is compensatory and not for the provision of health care" [Doc. 63 p. 6].[4] They assert that "the medical component of the

---

[4] The undersigned addresses Defendants' argument on the purpose of the EEIOCPA as it relates to Defendants' argument that the EEOICPA is not a "contract or plan" under § 24(b). As

7

EEOICPA is entirely remedial" and incidental to compensation, whereas traditional health care plans provide preventative and "general need-based healthcare" [*Id*.]. Defendants further distinguish the EEOICPA from traditional health care plans by arguing that the EEOICPA is applied "retroactive[ly]" after the employee becomes ill and serves merely as "a method of establishing a federal tort alternative" [*Id*. at 7–8]. In this regard, Defendants contend no case exists in which the EEOICPA was the victim health care benefit program in a prosecution for health care fraud under 18 U.S.C. § 1347 [*Id*. at 8].

Congress's purpose in enacting the EEOICPA "was to provide compensation *and other services* to current and former U.S. Department of Energy ("DOE") employees and contractors (or their survivors) who developed illnesses relating to exposure to ultra-hazardous substances at DOE sites." *United States v. Berry*, 832 F.3d 627, 630 (6th Cir. 2016) (citing 42 U.S.C. § 7384) (emphasis added). These other services, as Defendants acknowledge [Doc. 63 p. 6], include medical benefits. *See* 42 U.S.C. §§ 7384s(b) & 7384t.

The crux of Defendants' argument is that the EEOICPA does not function like a traditional health care insurance plan. But several courts have rejected similar attempts to constrain the definition of health care benefit program to traditional insurance plans. *Manamela*, 612 F. App'x at 155 (rejecting defendant's argument that "public or private plan or contract [must] be an insurance provider or entity funded by an insurer."); *United States v. Collins*, 774 F.3d 256, 260

---

discussed above, if the EEOICPA comes within the plain language of the statutory definition the undersigned need not look to other indicators of statutory meaning such as a statute's purpose or the legislative history. *See Plavcak*, 411 F.3d at 661; *In re Carter*, 553 F.3d 979, 986 (6th Cir. 2009) (observing that "the court considers other persuasive authority only if the statute is 'inescapably ambiguous.'" (quoting *Brilliance Audio, Inc. v. Haights Cross Commc'n, Inc.*, 474 F.3d 365, 371 (6th Cir. 2007)). "Persuasive authority can include other statutes, interpretations by other courts, legislative history, policy rationales, and the context in which the statute was passed." *Brilliance Audio*, 474 F.3d at 371. Here, the undersigned's consideration of persuasive authority— the purpose of the EEOICPA and other courts' interpretations of § 24(b)—support a finding that the EEOICPA is a health care benefit program as defined in § 24(b).

8

(5th Cir. 2014) (rejecting defendant's argument that the victim insurance companies are not health care benefit programs because they provide automobile insurance); *United States v. Gelin*, 712 F.3d 612, 617–18 (1st Cir. 2013) (rejecting defendants' arguments that the victim automobile insurance companies are not health care benefit programs because they did not provide health insurance or hold themselves out as health insurance companies and only covered medical expenses up to $8,000); *Lucien*, 347 F. 3d at 52 (rejecting defendants' arguments that the victim automobile insurance program is not a health care benefit program because it "does not operate nationwide" and "does not cover all injuries and illnesses-only those resulting from automobile accidents"); *United States v. Wahab*, 21-CR-603, 2022 WL 17581560, at *5–6 (S.D.N.Y. Dec. 12, 2022) (rejecting defendants' argument that the victim NBA Health and Welfare Benefit Plan did not "function[] as a traditional health care payer engaged in the provision of medical benefits"), *aff'd by United States v. Bynum*, 2025 WL 3628082 (2d Cir. Dec. 15, 2025). Thus, courts have deemed programs as varied as no-fault automobile insurance and children's social services organizations to be health care benefit programs because they offered medical benefits. *See, e.g.*, *Manamela*, 612 F. App'x at 155–56 (finding Philadelphia's in-home social services program for children to be a healthcare benefit program because medical and mental health services are included); *Collins*, 774 F.3d at 260 (finding an auto insurance company to be a health care benefit program under § 24(b) because it paid for medical treatment); *Lucien*, 347 F. 3d at 52 (finding the New York State no-fault automobile insurance program to be a health care benefit program because defendants "received *a medical benefit* as a result of the vehicle owners' no-fault insurance contracts"); *Wahab*, 2022 WL 17581560, at *5–6 (finding the NBA's Health and Welfare Benefit Plan was a health care benefit program under § 24(b) because the indictment states "the Plan provides participants reimbursement for expenses incurred in connection with the receipt of eligible health care services or treatments").

9

Defendants attempt to distinguish the above case law by arguing that these "cases include insurance companies which are *contractually* obligated to continuously pay for medical care as a part of routine coverage" while the EEOICPA does not provide routine coverage [Doc. 63 p. 7 (emphasis in original)]. While this argument possibly applies to *Wahab*, it does not apply to the other cases. Moreover, the deciding factor in each of the above cases was that the plan or contract provided medical benefits, not the extent of those benefits or whether they were remedial or routine. Moreover, while the undersigned, too, has located no health care fraud case in which the victim health care benefit program was the EEOICPA, the interpretation of § 24(b) by the above courts convincingly demonstrates that the EEOICPA falls within the plain language of the definition of a health care benefit program.

## C. Rule of Lenity

If a criminal statute "remains ambiguous after consideration of its plain meaning, structure, and legislative history, [courts] apply the rule of lenity in favor of criminal defendants." *United States v. Henry*, 983 F.3d 214, 218 (6th Cir. 2020) (quoting *United States v. Choice*, 201 F.3d 837, 840 (6th Cir. 2000)). At the motion hearing, defense counsel argued that the term "plan" in § 24(b) is ambiguous and any ambiguity must be resolved in favor of Defendants. The undersigned disagrees. The terms "contract or plan" in § 24(b) are not vague, they are merely broad.

Congress intended the definition of health care benefit program to be broad as demonstrated by the repeated use of the word "any." *See* 18 U.S.C. § 24(b); *Gelin*, 712 F.3d at 618 (reasoning that "the statutory definition [in § 24(b)] is simple and broad" and emphasizing the use of term "any" in the statutory definition); *see also United States v. Anderson*, 822 F. App'x 271, 276 (5th Cir. 2020) (applying a "broad meaning" to the term "health care benefit program" under § 24(b)); *United States v. Maynard*, 984 F.3d 948, 963 (10th Cir. 2020) (finding company's private health insurance plan for employees to be a "health care benefit program" under "broad statutory

10

definition" in § 24(b)). Courts turn to the rule of lenity only in the case of a "'grievous ambiguity or uncertainty'" when after employing the rules of statutory interpretation, the court "'can make no more than a guess as to what Congress intended.'" *Ocasio v. United States*, 578 U.S. 282, 295 n.8 (2016) (quoting *Muscarello v. United States*, 524 U.S. 125, 138–139 (1998) (citations omitted & modified)). Here, the Court is not faced with a grievous ambiguity. Instead, the EEOICPA qualifies as a health care benefit program under the plain language of § 24(b). Accordingly, Defendants' reliance on the rule of lenity is unavailing.

## III. CONCLUSION

For the reasons set forth above, the undersigned finds the EEOICPA qualifies as a "health care benefit program" under the plain language of the statutory definition in 18 U.S.C. § 24(b). Accordingly, the undersigned respectfully **RECOMMENDS** that Defendants' Motion to Dismiss Counts 1–15 of the Indictment [**Doc. 62**] be denied.[5]

**IT IS SO ORDERED.**

ENTER:

_Debra C. Poplin_
Debra C. Poplin
United States Magistrate Judge

---

[5] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Tchrs*, 829 F.2d 1370, 1373 (6th Cir. 1987).

11